# KNAPP v. DOLL.

[No. 22,511.    Filed November 26, 1913.]

1. PLEADING.—*Demurrer to Complaint.—Memorandum.—Necessity of Separate Paper.*—A memorandum filed with a demurrer, under Acts 1911 p. 415, need not be on a separate paper from that containing the demurrer. p. 530.

2. NEGLIGENCE.—*Use of Real Property.*—Where defendant, the owner of a building fronting on a street with a row of brick houses which was unbroken, save by a sixteen-foot alley intersecting the street near the center of the row about forty feet from defendant's property, had torn out his building, leaving an open space between the walls of the other buildings which was not protected by barriers or otherwise, and plaintiff who was an adult and familiar with the street and with a warehouse located upon the alley, while proceeding along the street in the nighttime, intending to go down the alley to the warehouse, and believing that he was walking in the alley walked into such opening and back therein about twenty feet from the sidewalk to a cellar into which he fell, no liability attached to defendant, since under the circumstances his failure to erect barriers or otherwise guard his lot was not negligence. pp. 531, 535.

3. NEGLIGENCE.—*Injury to Trespassers.—Licensees.*—The owner of private property is not obliged to make it safe for trespassers, or even licensees. p. 534.

4. NEGLIGENCE.—*Condition of Property.—Use of Private Property for Public Way.—Liability for Injuries.*—Where private property has been devoted even temporarily to the public use, or where even a few individuals have been in the habit of resorting or passing thereon, care must be taken not to render it unsafe without giving notice of the change. p. 534.

5. NEGLIGENCE.—*Condition of Real Property—Injury to Children.*
—The owner of real property which children are licensed to use
or known to frequent or to which they are likely to be enticed
by reason of the conditions. must not leave it in a dangerous con-
dition. p. 534.

From Elkhart Circuit Court; *James Story Drake,* Judge.

Action by Benjamin B. Knapp against George Doll. From
a judgment for defendant, the plaintiff appeals. (Trans-
ferred from the Appellate Court under §1405 Burns 1908,
Acts 1901 p. 590.) *Affirmed.*

*Lon W. Vail,* for appellant.

*Perry L. Turner,* for appellee.

MYERS, J.—Appellant sued appellee for personal injuries.
The complaint is in one paragraph. The errors assigned
are, (1) in overruling appellant's motion to strike from ap-
pellee's demurrer to the complaint, the memorandum stat-
ing wherein the complaint is insufficient, and (2) in sustain-
ing his demurrer to the complaint, the material parts of
which are as follows: That plaintiff is now, and has been
for more than thirty years past, a resident of Bristol, coun-
ty of Elkhart and State of Indiana, the same being about
ten miles distant from the city of Elkhart. That for many
years last past plaintiff has engaged in farming, dealing in
stock, wool and produce, and during all of the time he has
so resided in Bristol, he has had business in Elkhart at fre-
quent intervals, and has been during all of said time thor-
oughly familiar with Main Street, and the streets crossing
the same in the central portions of said city; that in the cen-
tral portion of said city on the west side of Main Street, and
especially between the streets of Marion and Harrison, for
a long period of years prior to the month of November, 1910,
there had existed a solid row of the fronts of business houses,
there being no gaps therein whatever except that an alley
16½ feet wide, half way between said Marion and Harrison
Streets, intersects with Main Street, and on the north side
thereof was a two-story brick building, and on the south side

thereof was a three-story brick building, the walls of said
building being 25 to 40 feet in height; that about 160 feet
west of Main Street at the crossing of said alley, where an-
other alley running nearly north and south intersects it, is
a warehouse occupied by dealers in feed, hay, grain, etc.,
which warehouse plaintiff had often had occasion to visit,
and with the said alleys the plaintiff has for many years
been familiar, and the foregoing describes their condition
on the evening of October 27, 1910. That on said date, at
the corner of the north side of Harrison Street and the west
side of Main Street, in said city, was a very large building
known as the Bucklen Opera House, which said building
occupies five business fronts of 20 feet each, fronting on
Main Street; that on and prior to October 27, 1910, the de-
fendant, George Doll, owned a business lot fronting on Main
Street and adjoining said opera house building on the north,
20 feet in width, and on the north side thereof was a two-
story brick building, and on the south side thereof was a
three-story brick building, the walls of said building being
25 and 40 feet in height, said walls being similar in appear-
ance to the walls on said alley, and an old business building
had up to within a few days of said time occupied said lot,
so that from said opera house north to the said alley there
was a solid wall of business fronts; that a few days previous
to October 27, 1910, the defendant tore away his said front,
and tore out his said building, leaving the space between
said high walls about the same in appearance as the opening
for the alley, which was but two business lots of 20 feet each
to the north thereof; that after said building had been torn
away, and the floor taken out, there existed in the rear part
thereof, and extending within 15 to 20 feet of the front
thereof, a cellar 9 to 12 feet deep, and the surface in front
of said cellar was nearly on a level with the sidewalk in front
of said building, and on October 27, 1910, and during the
evening thereof the said business property of the defendant
was in the condition as above described, having been so fixed

by the defendant, and all without the knowledge of the plaintiff, and on the evening of October 27, 1910, the defendant carelessly and negligently left his said property open to the sidewalk in front thereof without any guards or rails to prevent persons from walking therein, or any signal lights to indicate that said place was dangerous, and without any protection whatever. That the sidewalk in front of said opera house, and leading north in front of defendant's said building lot, and crossing said alley, is in a densely crowded portion of said city, where thousands of persons pass daily. That on the evening of October 27, 1910, plaintiff, intending to attend a meeting at the said opera house, went therein, but finding that he was too early for said meeting, determined to go to the warehouse at the crossing of the alleys as above described, and coming out of said opera house, and turning north on the sidewalk, he proceeded, passing three business fronts, until he came to the opening where defendant's said building had been torn away, and not knowing thereof, and believing that he had come to the alley leading to the warehouse as aforesaid, and there being no obstruction or guard of any kind, and nothing to warn him of the danger, and the space between said walls being dark, except that he could see the opening beyond, as if through a long open alley, and using due care and diligence, he turned therein, and, confidently believing that he was in said alley running west from Main Street to said warehouse, he walked directly forward with said confidence, and under said belief, until he pitched headlong into said cellar. That it was so dark between said walls that he could not see the cellar; that in his fall he turned entirely over and struck on a wooden box in the bottom of said cellar, upon his back, immediately back of the right lung, whereby and by reason whereof he was bruised and injured and made sick, and for four weeks was confined to his bed sick nigh unto death, and by reason of an internal injury received in said fall and occasioned thereby,

an abscess formed upon his said right lung, causing said serious illness, and a permanent injury. That by so opening and arranging his property, adjacent to the sidewalk on the main street of said city, as described in the foregoing, defendant had so shaped the same as to be a decoy to a death trap, likely to lead any prudent and cautious man, who while walking north from Harrison Street on the west side of Main Street, desired to turn west upon the first alley he would come to, would be most likely to be deceived thereby, and to turn therein, and plaintiff was deceived thereby, and decoyed therein, and as a direct result thereof, was injured as aforesaid. By the negligent act of the defendant in not protecting the same by a barrier, or lights, or both, the plaintiff was deceived thereby, and injured thereby, as in this complaint described. And plaintiff's said injuries were occasioned solely by the fault and negligence of the defendant, as aforesaid. Here follow descriptions of the character of the injury suffered by appellant, expenses incurred in nursing and treatment, allegation as to special damages suffered, permanency of the injuries, and demand for damages.

The demurrer to this complaint was for insufficient facts, and immediately following this ground of demurrer on the same paper was the following, "And for memorandum stating wherein said complaint is insufficient for want of facts, this defendant says that there can be no liability predicated upon the fact that the plaintiff mistook the defendant's said business lot for an alley or public way. That defendant was not bound to erect any barrier." Appellant filed a written motion to strike from the demurrer this memorandum, "on the ground that they are made a part of the demurrer, and are not in conformity to law." Which motion the court overruled, and plaintiff reserved an exception. It is appellant's contention that the memorandum filed with a demurrer under the acts of 1911 (Acts 1911 p. 415) must be on a separate paper. The point has been ruled

adversely to his contention.    *State, ex rel.* v. *Bartholomew* (1911), 176 Ind. 182, 95 N. E. 417.

Appellee challenges the ruling on the demurrer to the complaint on the ground that "the theory of the complaint is that appellee set a trap which decoyed appellant to his injury," and that the memorandum does not attack the complaint and that the complaint is drawn upon the theory that "the probability that such an accident might happen from thus leaving the excavation exposed, was so strong as to make it the duty of the owner of the lot as a member of the community to guard the community from the danger to which the excavation exposed its members," which manifestly constitutes an exception to the rule which is vaguely pointed out by the memorandum, and that the general rule is that "the law imposes upon the owner the duty not to permit a dangerous excavation to remain on his own land so near a street or highway as to injure persons who, while attempting to follow the same, may by mishap fall therein."    The points of challenge of the complaint by the memorandum to the demurrer are "(a) that there can be no liability predicated upon the fact that the plaintiff mistook the defendant's said building lot for an alley, or public way, (b) that defendant was not bound to erect a barrier."    We have examined each of the cases cited by appellant in support of his claim of the sufficiency of the complaint.    In the main they are based on invitation, express or implied, or license, to use a way, or place, or knowledge of its use, such as to put one on his guard as to the probability of injury from lack of guarding, or in leaving unguarded and unprotected places of known use, of such character, as that injury is likely to happen, or in leaving unprotected places so near known ways of travel or use, that injury may reasonably be expected to accrue from failure to protect or guard.    *Northwestern, etc., R. Co.* v. *O'Malley* (1903), 107 Ill. App. 599, is cited.    In that case are pointed

out some of the exceptions to the general rule that a land-owner is under no obligation to keep premises in safe condition for the benefit of trespassers, bare licensees or others who come upon them, not by invitation, either express or implied, with such qualifications as permitting a dangerous obstruction to be so near a highway that combined with the ordinary incidents of travel, they result in injury to persons or animals passing along the way; another where spring-guns are set for the protection of his own property, another where the conditions are such as to entice children of immature years and lacking discretion. The doctrine is familiar in our own cases, the only exception which could by any stretch of construction be applicable here being that with respect to highways. *Sears* v. *Merrick* (1899), 175 Mass. 25, 55 N. E. 476, was a case where a pronounced obstruction was placed by the property owner on his own premises, but in a place where it was paved uniformly otherwise, and in constant use as a traveled way, openly and freely by the public, as much so as the street, and as a part of it. *Learoyd* v. *Godfrey* (1885), 138 Mass. 315, was a case where a passageway eleven feet three inches wide went in from a street to accommodate four distinct dwellings located on the area into which the passage ran. At a point 34 feet and 4 inches from the street by reason of an "L" it widened to 17 feet 3 inches in width, and continued that width until the open back yard was reached, and this was the only passageway leading to the rear of the buildings. Nearly in the center and opposite the west end of the building on the north side of the passageway, was a well, around it was a curbing of joists and planks which raised it 15 inches from the surface. The well was partly covered, but there was an open space 2 feet long and 1½ feet wide. An officer in the discharge of his duty, at night when it was dark, coming out of this area, with which he was unacquainted, where he had made an arrest in one of the houses to which the passageway led, fell into the well, and there was held a liability on ob-

vious grounds. *Louisville, etc., R. Co.* v. *Popp* (1894), 96 Ky. 99, 27 S. W. 992, involved not only the question of backing cars without giving warning, in and near a passenger platform where children were in the habit of congregating, but also open cars calculated to tempt children to enter from curiosity or thirst, and a child six years of age with three others near its age, went into the car to get ice water, and was injured by the backing car striking a bumper, and the case is grounded on this knowledge of the company and the failure to know of his position, and guard against such danger. The case itself may be an extreme one, but has no application here. Another, *Lepnick* v. *Gaddis* (1894), 72 Miss. 200, 16 South. 213, 26 L. R. A. 686, 48 Am. St. 553, is relied on by appellant. The facts in that case are not applicable here, and the very full notes in 26 L. R. A. disclose the rules which render appellant's complaint in this case insufficient. See, also, *Dobbins* v. *Missouri, etc., R. Co.* (1897), 91 Tex. 60, 38 L. R. A. 573, 41 S. W. 62, 66 Am. St. 856. These two latter cases and notes, present the law questions quite fully as to obstructions, or dangers suffered in or near highways, ways which are more or less traveled, and public places, or places where there is an implied, if not express invitation to go, and there is a legal right to go, and also the question of places of a character likely to tempt those of immature years to go, or where it is known they do go. We have a different question here, where a man of mature years, thoroughly acquainted with the surroundings, but by reason of the fact that he saw an opening, concluded for himself that it was an alley, when it was dark, and he could not see where he was going, and was only drawn to go where he did because he could see an opening toward the direction he was going, who walked into an excavation 20 feet from the street line, and not adjoining the line of the alley. There could be no reasonable ground to anticipate that one would leave the street and walk into a cellar 20 feet from the street, or mistake the open place for an alley. It

is conceded by appellant that he was not invited there, had no business there, was not even a licensee, had no right to be there; no one had ever gone there; he had simply deceived himself as to the position of the alley, in other words, lost his way. Appellant contends, however, that the facts show that he was led into a trap, to his injury. Under this contention, any landowner would be liable for an obstruction, however remote from a public highway or line of travel, in improving or changing his property, if a traveler of mature years and judgment misconceived his way, or lost the way he intended, and wandered on the obstruction. But it is said that the recent removal of the building, leaving an open space, was calculated to induce one to believe that there was an alley there, and an implied invitation so to use it, and hence the duty to guard it. The only inducement presented was that the sides of the buildings adjoining appellee's property were similar to the walls in the alley, and he could see the opening beyond, as if through a long, open alley, and he believed he had come to the alley with which he was familiar. If it had ever been used as a way of passage, a

3. different question would be presented, but we understand the weight of authority in other jurisdictions, and certainly the rule in this State, to be that the owner of private property is not obliged to make it safe for trespassers, or even licensees. If the property or a part

4. of it has been devoted even temporarily to the public use, care must be taken not to render it unsafe, until proper notice at least has been given of the change. That nothing in the nature of a trap, or place likely to mislead, can be created to or through or along which the public, or even a few individuals have been in the habit of resorting, or passing, or where there is a probability that they may go, and a probability of injury from the condition. An exception applies to leaving in a dangerous condition

5. places where children are licensed or known to be, or likely to be enticed by the conditions. Such cases

are, *City of Indianapolis* v. *Emmelman* (1886), 108 Ind.
530, 9 N. E. 155, 58 Am. Rep. 65; *Young* v. *Harvey* (1861),
16 Ind. 314; *Carskaddon* v. *Mills* (1892), 5 Ind. App. 22, 31
N. E. 559, and cases there collected; *East Hill Cemetery Co.*
v. *Thompson* (1913), 53 Ind. App. 417, 97 N. E. 1036.

Appellee was under no duty to appellant to keep his prem-
ises safe from danger to him, from going on them without
invitation express or implied, but by inadvertence,
2. or to erect barriers, where the injury did not arise
from such proximity of the cellar to the street, that
appellant was injured in the lawful use of the highway, but
under circumstances so rare as to have been unexpected and
unforeseen. *Lingenfelter* v. *Baltimore, etc., R. Co.* (1900),
154 Ind. 49, 55 N. E. 1021; *Woodruff* v. *Bowen* (1893), 136
Ind. 431, 34 N. E. 1113; *Faris* v. *Hoberg* (1892), 134 Ind.
269, 33 N. E. 1028; *Indiana, etc., R. Co.* v. *Barnhart* (1888),
115 Ind. 399, 16 N. E. 121; *Evansville, etc., R. Co.* v. *Griffin*
(1884), 100 Ind. 221, 50 Am. Rep. 783; *Lary* v. *Cleveland,
etc., R. Co.* (1881), 78 Ind. 323, 41 Am. Rep. 572; *South
Bend Iron, etc., Co.* v. *Larger* (1894), 11 Ind. App. 367, 39
N. E. 209; *Hubbell* v. *City of Yonkers* (1887), 104 N. Y.
434, 10 N. E. 859, 58 Am. Rep. 522; *Plummer* v. *Dill* (1892),
156 Mass. 426, 31 N. E. 128, 32 Am. St. 463, and note.

In *Indiana, etc., R. Co.* v. *Barnhart, supra,* it was said
that even in case of a licensee, "the enticement, allurement
or inducement, as the case may be, must be the equivalent
of an express or implied invitation," and was approved in
*Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79
N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. 503, and had
been earlier declared in *Evansville, etc., R. Co.* v. *Griffin,
supra.* In *Reardon* v. *Thompson* (1889), 149 Mass. 267, 21
N. E. 369, it is said, "An open hole, which is not concealed
otherwise than by the darkness of night, is a danger which
a licensee must avoid at his peril," and to the like effect is
*Redigen* v. *Boston, etc., R. Co.* (1891), 155 Mass. 44, 28 N. E.
1133, 14 L. R. A. 276, 31 Am. St. 520. If this be true as

to a licensee, how much stronger the case must be as to one not even a licensee.

The complaint does not state a cause of action on the grounds of objection pointed out in the demurrer, and the judgment is affirmed.

NOTE.—Reported in 103 N. E. 385. See, also, under (2) 29 Cyc. 467, 471; (3) 29 Cyc. 442, 453; (4) 29 Cyc. 466; (5) 29 Cyc. 447, 463, 472. As to liability of owner of dangerous premises for injury of persons thereon, see 31 Am. St. 524. As to duty of property owner in dealing with children, see 49 Am. St. 406. On the duty of the owner of land which licensees are accustomed to cross, to guard against injuries in consequence of changes in the condition, see 13 L. R. A. (N. S.) 1126; 39 L. R. A. (N. S.) 217. As to duty of a property owner to trespassing child, see 32 L. R. A. (N. S.) 559.