Daniel J. GABOURY, Plaintiff-Appellant,

v.

IRELAND ROAD GRACE BRETHREN, INC., and City of South Bend, Defendants-Appellees.

No. 483S110.

Supreme Court of Indiana.

April 13, 1983.

Rehearing Denied June 14, 1983.

J. Christopher Warter, Michael A. Dvorak, South Bend, for plaintiff-appellant.

John R. Obenchain, David T. Ready, John E. Doran, South Bend, for defendants-appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals, Third District. The St. Joseph Circuit Court entered summary judgment in favor of the defendants, Ireland Road Grace Brethren, Inc., (Church) and the City of South Bend (City), in an action brought by

the plaintiff, Daniel Gaboury, to recover damages for injuries sustained in a motorcycle mishap. The Court of Appeals held that substantial fact issues existed as to both defendants and therefore the trial court erred in granting the motions for summary judgment. *Gaboury v. Ireland Road Grace Brethren, Inc.,* (1982) Ind.App., 441 N.E.2d 227. We find the Court of Appeals to be in error; therefore, we grant transfer, vacate the opinion of the Court of Appeals, and affirm the judgment of the trial court.

The question presented for our review is whether the trial court was justified in granting the motions for summary judgment.

At approximately 1:00 a.m., on July 6, 1978, plaintiff Gaboury was riding a Kawasaki 350 motorcycle on Glenlake Drive in South Bend, Indiana. Gaboury intended to turn onto Coral Drive but he missed the turn. One hundred and fifty feet past the Coral Drive intersection, Glenlake Drive ended and the Church driveway began. Gaboury decided to turn around in the church parking lot but he did not know that a steel cable had been stretched across the driveway. This cable was located approximately ten feet up the driveway. Gaboury suffered injuries when he struck the cable.

In his deposition filed with the court and used in the determination of the summary judgment motions by the defendants, Gaboury testified:

"Q. And you were going to go into a parking lot and turn around, right?

A. [Gaboury] Yes.

Q. So if there was a parking lot there, it must have meant the road came to an end?

A. Yes.

Q. And could you see that parking lot before you got to it?

A. I'm not sure. There's a driveway there. *I saw the driveway.*

Q. *You headed for the driveway, didn't you?*

A. Yes.

Q. I mean you intended to go into that parking lot to turn around?

A. Uh-huh.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Well, in other words, what I'm trying to ascertain is whether you, in your own mind, are confident with the fact that you did know how that particular intersection was set up and the fact that there was a dead end at Glenlake at that point.

A. Not really, no. I wasn't.

Q. You didn't know that?

A. Well, I-I don't know. I guess I knew there was a driveway there. I didn't know there was a cable there is what I'm trying to say.

Q. Well, I'm not asking you about the cable. I'm asking you about the layout of the street.

A. Yeah. I knew that.

Q. You knew that Glenlake ended at that point?

A. Uh-huh.

Q. Yes?

A. Yes.

Q. And you knew the parking lot was there?

A. Yes.

Q. The only thing you didn't know is whether a cable would be up?

A. Yes."

In opposition to the motion for summary judgment, Gaboury filed an affidavit in which he stated the following:

"4. That because of the lighting and the fact that the cable was in no way highlighted, the plaintiff never saw the cable prior to the accident and was never aware that the (sic) had entered the property of the Ireland Road Grace Brethren, Inc.

&ast; &ast; &ast; &ast; &ast; &ast;

6. That the plaintiff knew that a parking lot of a church was at the end of the road; however, he could not ascertain where the end of the road was located."

Gaboury now argues that the City negligently placed the lighting of the street. He argues that the City had the duty to sufficiently light the end of the street so that he could have determined where the street terminated and the church driveway began. As for the suit against the Church, Gaboury states that when the Church strung the cable to close off the driveway from the public it created a trap or pitfall and therefore the Church had a duty to warn him that the driveway was no longer open to the public. The City argues that Gaboury's deposition establishes that he saw that the street ended and that the driveway began and therefore was aware he was on church property. The Church's position is that Gaboury entered upon the Church's premises for his own convenience as a mere licensee at the time and place alleged, and as such, he took the defendant's property as he found it; that the defendant Church had a right to exclude others from its property; and that the affirmative duty of the defendant to the plaintiff at the time and place alleged was to refrain from willfully or wantonly injuring him or acting in a manner to increase the licensee's peril.

■ "The function of a summary judgment proceeding is to expedite the disposition of disputes in which there is no genuine issue of fact material to the claim involved and a party is entitled to judgment as a matter of law." *Barbre v. Indianapolis Water Co.,* (1980) Ind.App., 400 N.E.2d 1142, 1145; Ind.R.Tr.P. 56(C). The party seeking summary judgment has a burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact or inference to be drawn therefrom is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.,* (1980) Ind.App., 407 N.E.2d 1181, 1184. A fact is material if its resolution is decisive of either the action or relevant secondary issue. *Lee v. Weston,* (1980) Ind.App., 402 N.E.2d 23, 24. We agree with the Court of Appeals that to be considered genuine under Rule 56 a material issue must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or

judge to resolve the parties' differing versions of the truth at trial." *Stuteville v. Downing,* (1979) Ind.App., 391 N.E.2d 629, 631, quoting from *First National Bank of Arizona v. Cities Service Co., Inc.,* (1968) 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592.

Gaboury's statements of fact in his deposition and in his affidavit which was filed in opposition to the motion for summary judgment are inconsistent. The affidavit states that Gaboury could not ascertain where the end of the road was located and that he was not aware he had entered the Church property. In the deposition, Gaboury indicates he knew the Church property was there and purposely headed for it to turn around. A significant statement in the deposition reveals that Gaboury knew the layout of the area and everything about it except for the fact that the cable was stretched across the Church driveway. Gaboury also said that he knew there was a "no outlet" sign posted along Glenlake Drive but claimed that he did not see it the night of the accident.

■ The Court of Appeals held that since there was contradiction between Gaboury's deposition and his affidavit, only the trier of fact could choose which of Gaboury's statements to believe or disbelieve and therefore the trial court had to accept the statements in the affidavit for purposes of determination of summary judgment. We disagree with the Court of Appeals' assessment of the trial court's duties and responsibilities at this juncture. The trial court certainly had the duty to take into consideration all of the statements made by the plaintiff on which he based his cause of action since all of these statements were under oath. However, there does not seem to be such a conflict in either of his statements that any material fact is left to be determined by the trier of fact. Insofar as the City was concerned, plaintiff Gaboury said he knew of every circumstance except the cable. Although he makes a general statement in his affidavit that he did not know where the street ended and the driveway began, he does not assign any defect in

the construction or maintenance of the street that caused his accident and the resulting damages. He does not allege or claim better lighting would have shown any condition which would have prevented the accident or indicated negligence on the part of the City. Gaboury clearly said, and the facts show, that the accident was caused by striking the cable some ten or eleven feet into the driveway of the private owner, the Church. It certainly was not the duty of the City, in any way that the law can be interpreted, to light a road in order to illuminate private property so that any dangers thereon could be detected. The injuries were caused when Gaboury was approximately ten feet into the private property of the Church and had no relationship whatever to the roadway or the character of the maintenance or construction of the street. There was no material fact left to be resolved by the trier of fact and the trial court properly entered summary judgment in favor of the City of South Bend.

At this point we would also note that we do not agree with the Court of Appeals' assessment of the weight given to Gaboury's affidavit. The Court of Appeals held that the trial court could not grant summary judgment when the affidavit contradicted statements made in the deposition. This decision was reached by holding that the trial court may not assess the witness' credibility on a motion for summary judgment.

■ This is a question of first impression in this state. Other federal and state jurisdictions have reached decisions contrary to our Court of Appeals' decision and we find those cases to be well reasoned:

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

*Perma Research & Development Co. v. Singer Co.,* (2d Cir.1969) 410 F.2d 572, 578; *see also Radobenko v. Automated Equipment Corp.,* (9th Cir.1975) 520 F.2d 540, 544;

*Inman v. Club on Sailboat Key, Inc.,* (Fla. App.1977) 342 So.2d 1069, 1070; *Maryland Cas. Co. v. Murphy,* (Fla.App.1977) 342 So.2d 1051, 1053; *Stefan v. White,* (1977) 76 Mich.App. 654, 660, 257 N.W.2d 206, 209; *Gamet v. Jenks,* (1972) 38 Mich.App. 719, 726, 197 N.W.2d 160, 164; *Wachovia Mtg. Co. v. Autry-Barker-Spurrier Real Estate, Inc.,* (1978) 39 N.C.App. 1, 8, 249 S.E.2d 727, 732.

■ Gaboury's affidavit contradicts sworn statements in his deposition but he fails to offer any explanation for the discrepancies. We do not feel that issues of fact should be created in this manner and thus hold that "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant." *Wachovia, supra.*

■ Insofar as the Church is concerned, the only allegation made by the plaintiff is that he knew of all the circumstances except the cable. Plaintiff said that he did not see a sign warning of "no outlet" but he knew about it and was going into the Church parking lot in order to turn around. We must first determine the status of the plaintiff in order to determine what duty was owed him by the Church. "A person entering upon the land of another comes on to the land either as an invitee, a licensee, or a trespasser. The status of the person on the land determines the duty owed by the landowner to him." *Barbre, supra,* at 1145. Trespassers or licensees enter premises for their own convenience and at their own risk and take the property as they find it. *Great Atlantic and Pacific Tea Co., Inc. v. Wilson,* (1980) Ind.App., 408 N.E.2d 144. A business inviter owes a higher duty to those he invites on his property than he owes to one who is a trespasser or licensee. *Blake v. Dunn Farms, Inc.,* (1980) Ind., 413 N.E.2d 560. Concerning licensees, a landowner only owes him the duty of refraining from willfully or wantonly injuring him or acting in a way which would increase the licensee's peril. *Barbre, supra.* A showing of ordinary negligence by the

Church would not be sufficient for relief and this is agreed to by the parties.

■ Plaintiff Gaboury argues that the cable was a trap or hidden danger and his situation is an exception to the general rule that a licensee takes the land as he finds it. *Swanson v. Shroat,* (1976) 169 Ind.App. 80, 345 N.E.2d 872, held that while people ordinarily do not have to be warned of obvious dangers, the licensee cannot avoid hidden dangers if he does not know of them. A trap or pitfall has been defined to be a hazard that is concealed and not discernible by the use of reasonable care. *Strelecki v. Firemans Ins. Co. of Newark,* (1979) 88 Wis.2d 464, 472, 276 N.W.2d 794, 797. Borrowing the language from the Court of Appeals' opinion,

> "[t]he licensor must give reasonable notice or warning to licensees if he does any positive act creating a new concealed danger. *Frederick v. Reed* (1982) Ala. Civ.App., 410 So.2d 95, 97. The danger must be highly dangerous to life and limb; it inheres in the instrumentality or condition itself such that special precautions are required to be taken to prevent injury. *Bichsel v. Blumhost* (1968), Mo. App., 429 S.W.2d 301, 306."

441 N.E.2d at 231.

In *Bichsel,* the court gave the definition of a trap as: 1) a danger which a person who does not know the premises could not avoid by reasonable care and skill; or 2) a hidden danger lurking on the premises which may be avoided if unknown. Now the word "trap" is used generally to mean any kind of hidden dangerous condition. 429 S.W.2d at 304; *see* C.J.S. Negligence § 63(39) (1966). To say that the trier of fact could find that a cable stretched across a driveway on private property, insofar as any duty to a licensee or trespasser is concerned, may be found to represent a trap, is a misinterpretation of the settled law in this area and the failure to recognize the facts in this case. The closing of a driveway by a cable, a gate, or other form of obstruction is not so unusual a situation in our society that it can be considered a dangerous or hazardous condition. It certainly is a condi-tion that can be determined by ordinary and reasonable care on the part of the licensee. Further, there is no showing nor even an allegation that this was done by the church with any willful or wanton intent to harm this plaintiff or anyone else.

The trial court properly granted summary judgment in favor of both defendant City of South Bend and the Ireland Road Grace Brethren, Inc.

Transfer is granted, the opinion of the Court of Appeals is vacated, and the judgment of the trial court is affirmed.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER, J., dissents with separate opinion in which HUNTER, J., concurs.

HUNTER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The church in stretching this cable across its driveway was taking action to prevent entrance upon its property which it had a perfect right to do. It, in like manner as its neighbors on this dead-end street, is undoubtedly troubled by motorists using its drive and parking lot to turn around in, discarding trash there or doing other mischief, and in response put the cable up to prevent such trespassing motorists from entering. One can also discern here, without fear of wronging these parties, that the cable is removed and the public invited into the driveway and parking area, when the church is open and in use. Thus the cable is at once a physical obstacle to entrance and a signal that the invitation to enter has been withdrawn. In dealing with the unauthorized use of its driveway and parking lot, the church here is in much the same position as a shopping center or office building with appurtenant drives, walks and parking area or public parking lots, which are periodically closed to the public.

This Court in considering the duty of the owner of lands utilized in this manner, in *Knapp v. Doll,* (1913) 180 Ind. 526, 527, 103 N.E. 385, as noted by Judge Staton in his opinion for the Court of Appeals, stated:

"If the property or a part of it has been devoted, even temporarily, to the public use, care must be taken not to render it unsafe, until proper notice at least has been given of the change; that nothing in the shape of a trap, or place likely to mislead, can be created to or through or along which the public, or even a few individuals, have been in the habit of resorting, or passing, or where there is probability that they may go, and a probability of injury from the condition." *Gaboury v. Ireland Road Grace Brethren, Inc.,* (1982) Ind.App., 441 N.E.2d 227 at 231, n. 3.

Once an invitation to enter has been extended to the public, either expressly or impliedly, it must be withdrawn with proper notice and in a safe manner, so as not to injure those who approach the property with the intent to enter upon it.

Common sense dictates to me that a strand of cable stretched across a roadway would constitute the same type of hazard to those operating motor vehicles, as a wire stretched across a walkway would constitute to pedestrians. In the absence of a sign of reasonable size attached to it, covered with an iridescent or light reflecting material, it would be difficult to see in time to stop forward momentum. No one could fail to appreciate that without some such observable warning, the cable would upset and injure a cyclist. No one could fail to appreciate that without some such warning device a wire across a walk would trip and injure a pedestrian. The law imposes upon landowners who wish to take steps to temporarily close their properties to the public a duty to use such means and measures under the circumstances as are perceivable and understandable by one actually about to enter, so that the mind can come to an appreciation that the owner does not want him to do so, and thus command the body to turn about and go another way. The church owed such a duty to this plaintiff and a trier of fact could conclude that a breach of that duty occurred here. This plaintiff should have his day before the jury.

In plaintiff's deposition he stated:

"I didn't know there was a cable there is what I'm trying to say."

Referring to the roadway and the point where it ended and the church driveway commenced he stated in the same deposition:

"I knew it ended, but I didn't know where it ended exactly."

There is nothing inconsistent between these assertions and his affidavit that he could not ascertain where the end of the road was located, as believed by the majority in its opinion. Therefore, there are material issues of fact going to the issue of whether there was a breach of duty in the maintenance of this cable for the trier of fact.

The judgment should be reversed.

HUNTER, J., concurs with separate opinion.

HUNTER, Justice, dissenting.

I agree with my brother Justice DeBruler's dissenting opinion on the issue of the summary judgment granted against the Church. I agree that there are material issues of fact involving the Church and that the summary judgment should be reversed.

I also feel that the summary judgment against the City must be reversed. It is well settled in this state that on a motion for summary judgment, the trial court, in determining whether there is a genuine issue of material fact, must consider the facts set forth in the opposing party's affidavits as true. *Poxon v. General Motors Acceptance Corp.,* (1980) Ind.App., 407 N.E.2d 1181. The purpose of summary judgment is to provide a procedural device for prompt disposition of cases where there is no genuine issue of material fact to be determined. *Krueger et al. v. Bailey et al.,* (1980) Ind. App., 406 N.E.2d 665; *Hayes v. Second National Bank of Richmond,* (1978) 176 Ind. App. 299, 375 N.E.2d 647; Ind.R.Tr.P. 56(C). It cannot and should not be used as an abbreviated trial. *Podgorny v. Great Central Insurance Company,* (1974) 160 Ind. App. 244, 311 N.E.2d 640.

In the instant case, plaintiff's affidavit raised *two* factual issues which precluded

the grant of a summary judgment. He alleged that the city street was negligently designed, constructed and maintained so that he was not able to determine exactly where the end of the street was. There was not enough evidence before the trial court when summary judgment was granted to establish conclusively any of the allegations of negligence in this regard. While plaintiff acknowledged that he knew the street was a dead-end, he stated that he was not aware of the exact place where the dead-end road met the Church driveway. I agree with Judge Garrard that summary judgment is an ill-suited device for resolving the merits of tort claims sounding in negligence.

Furthermore, I do not agree with the majority's broad holding that an affidavit which contradicts testimony in a prior deposition is always insufficient to defeat a motion for summary judgment where the only issue of fact raised by the affidavit is the credibility of the affiant. This holding would require the trial court to become a fact-finder as to the credibility of the affiant *before* granting the summary judgment motion which is contrary to our prior case law. The trial judge may not weigh the evidence in a summary judgment proceeding. *Carrell v. Ellingwood,* (1981) Ind.App., 423 N.E.2d 630.

In this case, there was a conflict between testimony in plaintiff's deposition and affidavit that created a genuine issue of material fact in addition to the factual question of the City's negligence. As Judge Staton has pointed out, if plaintiff's affidavit was presented in bad faith, our Trial Rules prescribe relief. Ind.R.Tr.P. 56(G).

I feel that the trial court erred in granting the City's motion for summary judgment and the Church's motion for summary judgment. I find that the Court of Appeals' opinion reversing these judgments is correct. I would deny transfer.