**OPINION ON REHEARING**



ATTORNEY FOR APPELLANT

Mark S. Pantello
Benson, Pantello, Morris, James &
Logan, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES

David C. Jensen
Robert J. Feldt
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elizabeth Roumbos,

*Appellants-Plaintiff,*

v.

Samuel G. Vazanellis and
Thiros and Stracci, PC,

*Appellees-Defendants*

June 13, 2017

Court of Appeals Case No.
45A03-1606-CT-1424

Appeal from the Lake Superior
Court

The Honorable John M. Sedia,
Judge

Trial Court Cause No.
45D01-1501-CT-2

**Najam, Judge**

[1]     Samuel Vazanellis and law firm Thiros and Stracci, PC, (collectively, "Law Firm"), request rehearing, asking us to reconsider our reversal of the trial court's grant of summary judgment in their favor. Law Firm specifically takes

issue with our rejection of their argument that Roumbos' testimony was equivocal. We stated in our original opinion:

> In its brief on appeal, the law firm asserts that Roumbos was equivocal about the cause of her fall in her deposition testimony. We cannot agree. It is clear from the totality of her testimony that at all times Roumbos identified the wires as the cause of her fall. *See* Appellant's App. Vol. II at 80-83. Accordingly, we reject the law firm's argument that Roumbos cannot contradict herself to create a genuine question of material fact as well as the law firm's argument that Roumbos' claim against the hospital was based exclusively on the fact of the fall.

*Roumbos v. Vazanellis, et. al.*, 71 N.E.3d 64, 65 n.1 (Ind. Ct. App. 2017). In its petition for rehearing and subsequent notice of additional authority, Law Firm likens the facts in this case to those in *Central Indiana Podiatry, P.C. v. Barnes & Thornburg, LLP*, 71 N.E.3d 92 (Ind. Ct. App. 2017). We grant rehearing to distinguish the facts of this case from those in *Podiatry* and its predecessor, *Gaboury v. Ireland Road Grace Brethren, Inc., et. al.*, 446 N.E.2d 1310 (Ind. 1983).

[2] Law Firm argues Roumbos made contradictory statements in two different depositions, and thus summary judgment was proper under *Podiatry* and its predecessor, *Gaboury*. However, the statements Law Firm cites are not contradictory and thus *Podiatry* and *Gaboury* do not control. In Roumbos' first deposition, the following exchange occurred:

> Q:     And do you know how you tripped? What foot came in contact with these wires?

[Roumbos]: That, I can't tell you.

* * * * *

Q:     And you don't know what foot came in contact with what?

[Roumbos]: No.

(Appellant's App. Vol II at 81-2.) In her second deposition, Roumbos testified:

Q. . . . had you walked over [the wires] to get to the table to pour the water?

A. Yes, I did.

Q. Okay. And did you step over them?

A. No.

Q. You just walked over them?

A. Uh-huh.

* * * * *

Q. Okay. Well, you stepped on them, or you stepped over them, one or the other, didn't you?

A. If I step[ped] on [them], I could have fell [sic].

\* \* \*

Q. And you agree with me that if you look[ed] down, you would have seen [the wires], wouldn't you?

A. Probably.

Q. . . . And when you turned around, you didn't look down, though, did you?

A. No.

\* \* \*

Q. But there was no reason why you couldn't look around and see what was on the floor, was there?

A. No.

(*Id.* at 93-94, 96.)

[3] Roumbos' answers are not contradictory because the questions were not the same. In the first exchange, the questions pertain to which foot came into contact with the wires causing Roumbos to fall, and the compound nature of the first question makes it difficult to ascertain which question Roumbos answered. The second exchange more explicitly questions Roumbos on the details of the fall, but in it she is never asked to identify the foot that tripped. As such, Roumbos did not contradict herself.

[4] In contrast, the plaintiff in *Podiatry*, Miller, explicitly contradicted his earlier testimony when he filed an affidavit in response to the defendant's motion for summary judgment:

> Further, Miller relies heavily on his statements set forth in an affidavit filed as part of the malpractice action. In the affidavit, he emphasizes the importance the durational time limit played in the Vogel Agreement, specifically that he thought Vogel would perform surgeries with FASC as long as he practiced in the area. Miller argues had he known Vogel could terminate his affiliation with FASC under the original terms of the Vogel Agreement, he would not have signed the Fee Release. However, in his testimony as part of the Hamilton County Litigation, Miller testified multiple times that he was not concerned about the time frame in which Vogel would perform surgeries at FASC and had not given the time frame much thought.
>
> * * * * *
>
> Much of Miller's argument on appeal is about the alleged concealment of Vogel's concerns about implementing the Settlement Agreement resolving the federal litigation because Vogel wanted a durational time limit on his ownership of FASC. Miller's position regarding his concern with a durational time limit seems to change based on what would benefit him in a particular case. The changing nature of Miller's own testimony cannot create a genuine issue of material fact to defeat B&T's motion for summary judgment, as the time frame and the communication surrounding the Vogel Agreement and Vogel Litigation seem to be the crux of Miller's fraud allegations.

*Podiatry*, 71 N.E.3d at 96 (internal citations to the record omitted).

Similarly, in the seminal case regarding this issue, *Gaboury*, the same explicit contradiction existed between the plaintiff's statements in a deposition and his averments in an affidavit in response to summary judgment. In that case, Gaboury sued Ireland Road Grace Brethren after he hit a cable on its property and was injured. In the deposition, Gaboury stated he knew where the road ended, he knew a parking lot existed at the end of the road, and he intended to turn around in the parking lot owned by Ireland Road; the only thing he indicated he did not know was "whether a cable would be up[.]" *Gaboury*, 446 N.E.2d at 1312. However, in his affidavit in opposition to Ireland Road's motion for summary judgment, he stated:

> 4. That because of the lighting and the fact that the cable was in no way highlighted, the plaintiff never saw the cable prior to the accident and was never aware that the (sic) had entered the property of the Ireland Road Grace Brethren, Inc.
>
> * * * * *
>
> 6. That the plaintiff knew that a parking lot of a church was at the end of the road; however, he could not ascertain where the end of the road was located.

*Id.* Our Indiana Supreme Court adopted a tenet of law long held in other jurisdictions: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as

a procedure for screening out sham issues of fact." *Id.* at 1314 (*quoting Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

[6] Here, the compound nature of the question asked in the first deposition makes it difficult to determine which question Roumbos answered. Further, the first question asked was not specific and the second involved the foot that tripped over the wire. In the second deposition, the questions were more nuanced, and thus Roumbos' answers were more concise. The questions in the second deposition did not involve the identification of the foot on which Roumbos tripped. The facts in this case are strikingly different than those in *Podiatry* and *Gaboury*, as in those cases the two statements at issue were unquestionably contradictory, and in this case they are decidedly less so.

[7] We grant rehearing to clarify the distinction between *Podiatry* and *Gaboury* and the facts of this case. We affirm our original opinion in all respects.

Bailey, J., and May, J., concur.